Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, to receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the alleged injury, defendant-employer was insured by Florist Mutual Insurance Company with Crawford and Company acting as the third-party administrator.
3. The parties, through counsel, stipulated the following records might be received into evidence without the need for further authentication or verification
 a. Stipulated Exhibit 1: consisting of plaintiff's medical records,
 b. Stipulated Exhibit 2: consisting of Industrial Commission Form 22 Wage Chart, prepared by Southern Steel Wire, Incorporated for Billy Ray Welch, dated May 6, 1996.
 ***********
The Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. On April 12, 1994, plaintiff was a 41 year old male and had worked for the defendant-employer since January, 1989. Plaintiff has an eighth grade education and has some ability to read and write, but is not proficient. On April 12, 1994 and at all relevant times, plaintiff was employed by defendant-employer as a wire-drawer and ran three wire drawing machines which mechanically reduced the wire by a form of extrusion process. Plaintiff's job also required that he put a type of "lubricant" on the wire if needed.
2. On the evening of April 12, 1994, plaintiff arrived for his shift at approximately 11:00 p.m. Around 1:00 a.m. on April 13, 1994, plaintiff went to the storage area as was his usual habit in the course of his regular employment to retrieve lubricant. This lubricant is a powder which is contained in a five gallon-barrel. On the morning of April 13, 1994, the containers of lubricant were closely packed in the storage area so that the claimant had to climb on top of other barrels to get the lubricant he needed as it was located in the middle of a group of barrels containing other things. He climbed over a group of barrels and reached down to pick up a bucket of lubricant out of the appropriate barrel. As he was lifting the bucket of lubricant, his right foot slipped and his right leg fell through between the barrels up to the groin. At that time the plaintiff felt a burning on his right side from his buttock down his leg to his foot.
3. No one was present when the plaintiff injured himself. The plaintiff could walk, but he continued to experience a burning sensation.
4. The plaintiff walked to the break room and told the most senior employee present, J.D. Hazelwood, about the accident. The defendant-employer did not have a supervisor on site during the night shift. Mr. Hazelwood directed the plaintiff to tell Bob Alexander, plaintiff's supervisor, about the incident when he arrived at approximately 6:00 a.m.
5. The plaintiff continued to work and completed his shift, continuing to experience a burning sensation. The plaintiff saw Bob Alexander at 6:00 a.m. and told him of his injury. As a result of his discussions with Mr. Alexander, the plaintiff was led to believe that this injury would not be handled by workers' compensation and, therefore, he did not report his injury by accident to his medical providers.
6. Upon leaving work soon after 6 a.m. on April 13, 1994, the plaintiff returned home, took a shower, and proceeded to seek medical treatment from Dr. Charles Weldon Joyce at Western Rockingham Medicine in Madison, North Carolina, for his symptoms caused by his compensable work-related injury by accident, and has received further treatment for these symptoms since that time.
7. Plaintiff testified that Dr. Joyce took him out of work for a while, but that he returned to work anyway because he couldn't afford to be out of work.
8. On April 13, 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer when his right foot slipped off a barrel causing him to fall into a space between the barrels up to the level of his groin.
9. Earlier, on April 8, 1994, plaintiff had presented to the emergency room of the hospital seeking treatment for back pain radiating down his leg. He reported that he bent over to put on his pants and immediately experienced pain in his back and down his leg. Dr. Carl W. Nash examined plaintiff and found that plaintiff's intervertebral spaces were well maintained; the vertebral bodies were normal in height; and there was some degenerative spurring in the lower lumbar spine. No fracture or dislocation was demonstrated.
10. After April 13, 1994, plaintiff did not seek further medical treatment until July 8, 1994 when he presented to the emergency room complaining of low back pain. A CT scan was performed on plaintiff July 9, 1994, which disclosed a very large herniated disc at L5-S1.
11. Plaintiff saw Dr. Joyce on Monday, July 11, 1994, and Dr. Joyce referred him to Dr. Titus Plomaritis, Jr., an orthopedic surgeon in Eden, North Carolina.
12. On July 13, 1994, plaintiff presented to Dr. Plomaritis, complaining of a three and one-half month-old pain in his right buttock and posterior thigh and down his right foot. At that time, plaintiff did not give a history of anything out of the ordinary occurring at work.
13. Plaintiff underwent an L-5 hemilaminotomy and an L5-S1 diskectomy and nerve root exploration by Dr. Plomaritis on July 19, 1994. According to a "pre-op" history taken by Dr. Plomaritis' assistant on July 19, 1994, "The patient is having pain in his lower back, buttocks and right leg for approximately four to five months. It apparently came on suddenly. The patient is following his normal routine. Nothing out of the ordinary happened at work where he is employed with Southern Steel and Wire."
14. Dr. Plomaritis continued to see plaintiff through February 27, 1995.
15. At the time of the compensable injury by accident, plaintiff was earning an average weekly wage in the amount of $480.20, which yields a compensation rate of $320.15.
16. In June 1997 plaintiff returned to Dr. Plomaritis for a disability rating. At that time plaintiff was working with a different employer as a doffer. At that time, Dr. Plomaritis placed plaintiff at maximum medical improvement from his diskectomy and rated plaintiff with a twenty percent (20%) permanent partial disability based upon degenerative changes at L-5, S-1 caused by his degenerative disc disease.
17. In the opinion of Dr. Plomaritis, plaintiff's treating physician, plaintiff's history given to the emergency room physician of bending over to put on his pants and experiencing pain in his back and down his leg April 8, 1994, was consistent with the complaints for which he treated the plaintiff. He indicated that this history could explain the symptoms that plaintiff was experiencing and that this incident could cause a herniated disc. During the time Dr. Plomaritis was treating plaintiff, the plaintiff did not relate to him the incident of slipping between the barrels at work which occurred on April 13, 1994. Based upon review of his emergency room history, Dr. Plomaritis stated that plaintiff gave a good description of how he was bending over putting on some clothes and felt the pain in his right buttock and then down his leg. He further opined that plaintiff described conditions where medical problems such as those experienced by the plaintiff frequently start. Dr. Plomaritis was also of the opinion that plaintiff's injury by accident of slipping between the barrels at work could have caused his problem. Dr. Plomaritis could not determine which of the two events caused plaintiff's pain and herniated disc; but he gave weight to the fact that the incident on April 8, 1994 wherein plaintiff bent over to put on his pants, caused enough pain for him to visit the emergency room.
18. In response to the hypothetical question of whether if plaintiff "dropped to his groin and injured himself some little time before and then later bent over and felt a sharp pain too, that the two could combine to give plaintiff what he had," Dr. Plomaritis said it was possible.
19. The plaintiff's herniated disc at L5-S1 and subsequent surgery thereafter on July 19, 1994 could have been caused by the April 8, 1994 bending incident where he was reaching over to put on his pants and felt immediate pain in his right lower back as it "gave way". Or, plaintiff's herniated disk and surgery could have been caused by the April 13, 1994 compensable incident at work where plaintiff's right foot slipped off a barrel causing him to fall into a tight space between two barrels up to his groin.
20. Based upon the greater weight of the evidence, plaintiff's herniated disc, his need for surgery and his resulting disability were caused by his April 8, 1994 injury which was not work-related. Plaintiff's back pain which radiated down his right buttock and leg began with the incident where he bent over to put on his pants. Plaintiff denied a work-related injury when treated by Dr. Plomaritis on July 13, 1994. According to the history given by plaintiff to Dr. Plomaritis, nothing out of the ordinary happened at work. Plaintiff did not report an injury resulting from slipping between barrels at work to Dr. Plomaritis prior to surgery, nor during the period he was being treated. Dr. Plomaritis' first notice of an incident involving slipping between barrels was almost three years later. Also, Dr. Plomaritis was of the opinion that the history plaintiff gave of bending over putting on his pants and feeling a sharp pain in his right buttock that went down his leg, is a description of how the type of medical problems plaintiff had frequently start. Dr. Plomaritis further testified that if forced to determine what event might have caused an injury when either could have caused the problem, he usually relies upon what his patient has told him. The Full Commission gives greater weight to the history given by plaintiff to Dr. Plomaritis, his treating physician, to assist in his diagnosis and treatment. Based upon this history and other evidence, plaintiff has not proven that his accident at work on April 13, 1994 caused any disability.
 ***********
Based on the foregoing findings of fact and stipulations, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment on April 13, 1994. However, plaintiff did not suffer any disability from this injury. N.C. Gen. Stat. § 97-2(b).
2. The plaintiff has failed to prove by the greater weight of the evidence that his herniated disc was caused, aggravated or accelerated by his injury by accident of April 13, 1994 and, therefore, plaintiff is not entitled to any workers' compensation benefits for those conditions. Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law and the evidence in this case, plaintiff's claim for workers' compensation benefits must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
 S/_________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________________ RENÉE C. RIGGSBEE COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER